IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CR-104-2F
No. 5:12-CV-92-F

| | |
|---|---|
| JONATHAN JORDAN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on Petitioner's 28 U.S.C. § 2255 motion filed on February 24, 2012 [DE #105] and his supplemental motion for alternative relief under 28 U.S.C. § 2241 and 28 U.S.C. § 1651, filed on December 19, 2012 [DE #123]. The government has moved to dismiss Petitioner's claims or, alternatively, for summary judgment; and Petitioner has responded to the government's motion. This matter was referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings. To further develop the record, the undersigned conducted an evidentiary hearing on March 26, 2014, at which the government and Petitioner, with counsel, appeared. For the reasons stated herein, it is recommended that the government's motion be granted, Petitioner's motions be denied, and Petitioner's claims be dismissed.

## STATEMENT OF THE CASE

On April 16, 2009, a federal grand jury returned an indictment charging Petitioner with conspiracy to distribute more than five (5) kilograms of cocaine, more than fifty (50) grams of cocaine base (crack), more than one hundred (100) grams of heroin and a quantity of marijuana,

in violation of 21 U.S.C. § 846 ("count one") and aiding and abetting and possession with the intent to distribute a quantity of cocaine and more than fifty (50) grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("count two"). Petitioner pled guilty to count one pursuant to a written plea agreement. On March 2, 2010, the court sentenced Petitioner to a 295-month term of imprisonment as a career offender. An appeal was not timely noticed, but correspondence received from Petitioner in November 2010 was construed as a notice of appeal by the Fourth Circuit Court of Appeals, and appeal was noted on November 23, 2010. The Fourth Circuit ultimately dismissed Petitioner's appeal as untimely on September 9, 2011.

## DISCUSSION

At the time Petitioner pled guilty, the law in the Fourth Circuit was well settled that an offense under North Carolina's Structured Sentencing Act was punishable by a term exceeding one year if the maximum aggravated sentence that *any* defendant could receive exceeded twelve months. *See United States v. Jones*, 195 F.3d 205 (4th Cir. 1999), *abrogated by United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). Thus, an individual could have a prior conviction "punishable by a term exceeding one year" even if he could not have received a sentence of that duration.

Based upon then-existing Fourth Circuit precedent, Petitioner's two prior state court convictions for possession with the intent to sell and deliver cocaine qualified as felony offenses for federal sentencing purposes. As such, Petitioner was classified as a career offender under

U.S. Sentencing Guideline § 4B1.1, thereby increasing Petitioner's offense level.[1]

Following Petitioner's conviction and sentencing, the Fourth Circuit issued an *en banc* decision overruling its prior precedent and holding that a court must look to the maximum punishment that the particular offender could have received in determining whether a prior North Carolina conviction may serve as a predicate felony for federal sentencing purposes. *Simmons*, 649 F.3d at 243-46.

Relying on *Simmons*, Petitioner moves to vacate his sentence, challenging his classification as a career offender. Petitioner additionally asserts that he was deprived of his right to appeal as a result of the ineffective assistance of counsel. The government does not dispute that Petitioner's prior convictions were classified as Class H felonies or that Petitioner, because of his prior record level and the absence of any findings in aggravation, was not subject to punishment exceeding one year under North Carolina's Structured Sentencing Act. Instead, the government moves to dismiss Petitioner's § 2255 motion on the grounds that the motion is untimely, that the relief requested is barred by Petitioner's plea waiver, and that Petitioner's claims are not cognizable under § 2255.

**I.      Timeliness**

Under the Antiterrorism and Effective Death Penalty Act of 1996, § 2255 claims are subject to a one-year statute of limitations, which runs from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States

---

[1] Application of the career offender guideline did not have an effect on Petitioner's criminal history category inasmuch as Petitioner's criminal history points resulted in a criminal history category of VI.

is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).

Because Petitioner did not timely appeal, the government contends that his conviction became final in March 2010, upon expiration of his time to appeal. Petitioner, on the other hand, argues that the one-year limitations period did not begin to run until after the time had elapsed for seeking certiorari of the dismissal of his appeal by the Fourth Circuit.[2] Neither the Supreme Court nor the Fourth Circuit has addressed the issue presented here – When does a judgment become final for purposes of § 2255(f)(1) where an untimely appeal is filed and docketed but later dismissed by the circuit court as untimely?

In *Jimenez v. Quarterman*, 555 U.S. 113 (2009), the Supreme Court held that a state-court order granting an out-of-time appeal restored the pendency of direct review and rendered the petitioner's conviction nonfinal for purposes of 28 U.S.C. § 2244(d)(1)(A). As a consequence, the petitioner's conviction did not become final for purposes of the limitations statute until the time for seeking certiorari had expired. *Jimenez*, 555 U.S. at 120. Although the rule announced in *Jimenez* would appear equally applicable to § 2255 motions, it is not clear

---

[2]Relying on the Fourth Circuit's decision in *Simmons*, Petitioner also asserts that his claim is timely under (f)(4) due to newly discovered facts. For purposes of § 2255(f)(4), "facts" may include court rulings, such as a finding that the petitioner is not guilty of an offense. *See Johnson v. United States*, 544 U.S. 295 (2005). However, a legal decision that does not affect the validity of the petitioner's own underlying convictions is not a "new fact" for purposes of (f)(4). *Walton v. United States*, No. 2:07-CR-17-1F, 2013 WL 1309277 (E.D.N.C. Mar. 28, 2013) (collecting cases).

4

whether the Fourth Circuit's actions in construing Petitioner's correspondence as a notice of appeal and directing this court to file it as such "reopened" direct review of Petitioner's conviction so as to render his conviction nonfinal. Nevertheless, the court need not decide that issue today. As discussed below, even assuming Petitioner's motion is timely, his underlying claims are without merit.

## II.     Ineffective Assistance of Counsel

The court first addresses Petitioner's claim that he was deprived of his right to appellate review as a result of the ineffective assistance of counsel. To establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and there is "a reasonable probability that . . . the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The reasonableness of counsel's performance must be judged according to the specific facts of the case at the time of counsel's conduct. *Id.* at 690. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

Counsel has a constitutional duty to comply with his client's instructions to file an appeal. Where he fails to do so, his conduct is *per se* ineffective, notwithstanding the likelihood of success on appeal. *United States v. Peak*, 992 F.2d 39, 41-42 (4th Cir. 1993). A waiver of appellate rights contained in a plea agreement does not absolve counsel of his duty to comply with his client's instructions to appeal. *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007).

5

Moreover, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In determining whether counsel has a duty to consult with his client about an appeal, the Supreme Court has provided the following guidance:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* Where the duty to consult arises, counsel must advise the client "about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the [client's] wishes." *Id.* at 471.

On March 26, 2014, the court held an evidentiary hearing on Petitioner's ineffective assistance of counsel claim. Petitioner was represented at the hearing by Jeffrey Gillette and testified on his own behalf. The court also heard the testimony of Joseph Zeszotarski, Jr., who served as Petitioner's counsel throughout the pretrial proceedings, Petitioner's Rule 11 proceeding and sentencing; and Curtis Scott Holmes, who was appointed as counsel shortly after Petitioner's sentencing proceedings.

It is undisputed that Petitioner was displeased with the outcome of his case. Based on his plea agreement, Petitioner believed he would receive a sentence much lower than that

6

recommended in the PSR and ultimately imposed. At sentencing, Petitioner asked for a new lawyer, which the court denied. That same day, Zeszotarski moved to withdraw as counsel, stating that he met with Petitioner in the lockup area after his sentencing and that Petitioner informed Zeszotarski that he wanted new counsel appointed to represent him "with respect to pursuing a Rule 35 motion . . . and . . . with respect to advising him of his options with regard to his current sentence." (Mot. Withdraw [DE #79] at 2.) The day after Petitioner's sentencing, an order was entered allowing Zeszotarski's withdrawal and directing the Federal Public Defender to appoint substitute counsel immediately.

Holmes filed a notice of appearance three days after Petitioner's sentencing, on March 5, 2010. (Notice Appearance DE #81.) That same day, Holmes emailed Zeszotarski indicating that he would like to talk with him about "whether filing an appeal would affect future cooperation efforts." (Govt. Ex. 1.) He also spoke with Eric Goulian, the Assistant United States Attorney assigned to the case, as well as a number of Petitioner's family members who indicated that Petitioner had additional information and was eager to cooperate. Holmes testified that based on his communications with Zeszotarski and Goulian, Holmes believed that Petitioner had a good chance of getting a Rule 35 motion, but the government had advised it would not file a Rule 35 motion if Petitioner appealed.

On March 10, 2010, Holmes met with Petitioner. Holmes testified that they discussed whether Petitioner should appeal or pursue a Rule 35 motion. With the appeal waiver contained in Petitioner's plea agreement, Holmes stated that he advised Petitioner his best path would be a Rule 35 motion. Holmes testified that Petitioner agreed and stated that he wanted to continue cooperating with the government and did not want to appeal. Holmes' testimony is corroborated

7

by notes made contemporaneous with the meeting, which provide "No Appeal" and "Rule 35 motion."

Based on their discussions, Holmes made arrangements for Petitioner to be debriefed in April by an agent of the State Bureau of Investigation and two local officers. Petitioner was not able to provide substantial information during the debriefing, but the parties discussed the possibility of third-party cooperation. Following the debriefing, Holmes spoke with various members of Petitioner's family in order to determine whether any of them would be willing to participate in a controlled purchase. Holmes had difficulty reaching Petitioner's family and subsequently asked Petitioner for his assistance.

Petitioner testified at the evidentiary hearing that he told Zeszotarski he wanted to appeal when he spoke with him after the sentencing. Petitioner stated that Zeszotarski suggested he should request new counsel, and he apparently authorized Zeszotarski to withdraw and to request the appointment of new counsel.

Petitioner stated that Holmes came to see him seven to ten days after his sentencing. He admits that Holmes talked with him about both Rule 35 and an appeal. He stated that Holmes "didn't see any reason to appeal" – that Holmes discussed with Petitioner the appeal waiver contained in his plea agreement and advised Petitioner that there were no meritorious issues for appeal. He further stated that Holmes advised that appealing was not a good idea and suggested that Petitioner continue with his cooperation, though Petitioner denies that Holmes ever told him he would not get a Rule 35 motion if he appealed. Petitioner testified that he wanted to appeal because an appeal "would take more time off than a Rule 35" motion and that he told Holmes to appeal.

8

Case 5:09-cr-00104-F   Document 145   Filed 03/31/14   Page 8 of 15

The evidence as to Petitioner's instructions being controverted, the court must make a factual finding whether Petitioner instructed Holmes to appeal. In doing so, the court must assess the credibility of the witnesses, considering such factors as the variations in their demeanor and tone of voice, as well as the witnesses' motives, the level of detail in their testimony and the existence or lack thereof of any documents or objective evidence corroborating or contradicting the testimony. *Rahman v. United States*, No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013).

Having carefully considered all of the evidence presented in this matter, the court determines that Holmes' testimony is more credible than Petitioner's and finds, as a fact, that Petitioner did not expressly instruct Holmes to appeal. In making this finding, the undersigned notes that at no point did Petitioner write to Holmes asking about the status of his appeal. In early April 2010, Petitioner did send Holmes a letter, stating that he hoped "it's not to [sic] late to try to give that plea back" and that he wanted a trial "because . . . what they have on me is beatable." (Govt. Ex. 3 at 1.) However, he did not mention appealing his sentence, nor did he subsequently write Holmes about the status or outcome of his appeal or to request a copy of the appeal brief or any other documents related to his appeal. Rather, it was over eight months after his sentencing and after cooperation efforts had failed that Petitioner wrote to the Fourth Circuit (rather than his attorney) to inquire about the status of his appeal.

When Holmes learned of Petitioner's letter to the Fourth Circuit, Holmes wrote to Petitioner on December 9, 2010, stating as follows:

> I write in response to the letter you filed with the Court inquiring as to the status of your "appeal." I was appointed on March 5, 2010 to help you decide whether to pursue an appeal or to continue to cooperate with the Government in hopes of a Rule 35 motion. I spoke with the Assistant United States Attorney Eric Goulian on that day, and he advised that you had a good chance at an additional

9

reduction for further cooperation. He also advised that filing a notice of appeal would impair your chance at a further reduction. I came to visit you on March 10, 2010 at the Caswell Correctional facility where we met and discussed at length your right to appeal and the possibility of a Rule 35 reduction. I pointed out to you that you had signed an appeal waiver in your plea agreement and received a sentence within the guideline range. You instructed me at that time not to pursue an appeal, and asked for an additional debriefing with agents. I arranged another debriefing with SBI Agent Lyn Gay on April 14, 2010. I was present at that debriefing, and there were discussions of third party cooperation with your family members. Afterwards I had sporadic contact with your family members and was not able to arrange third party cooperation. I wrote to you June 29, 2010 informing you that I had difficulty contacting your family and I requested your assistance getting in touch with them. I have not heard from you or them until now. The time to file a valid appeal has long passed, and your plea agreement contained a valid appeal waiver.

> The clerk has treated the letter you filed as a notice of appeal. I suggest that you authorize me to withdraw that appeal because it is without merit. I can contact Mr. Goulian to see if there is any basis to continue to explore a potential Rule 35 reduction. Please advise how you would like to proceed.

(Govt. Ex. 4 at 1.)

Petitioner did not dispute the facts contained in Holmes' letter or in any way suggest that Holmes had let him down by not filing a notice of appeal. Instead, Petitioner responded with a letter indicating that he understood what Holmes had said but that he would dismiss his appeal only if the government agreed in writing to a Rule 35 motion "cutting his time in half."[3] He stated "I got a lot of time to do and if they [sic] not trying to do that I might as well . . . fight for my freedom." (Govt. Ex. 5.)

Having found that Petitioner did not instruct Holmes to appeal, the court further determines that Petitioner has not established that he was denied effective assistance of counsel with respect to his appeal. The uncontroverted evidence presented in this matter establishes that

---

[3]Holmes testified that he was unable to recall when he received this letter from Petitioner but that the location of the letter within his file indicates that it was received after Holmes' December 9, 2010, letter. Based on Holmes' testimony as well as the contents of Petitioner's letter, the court finds that the letter was written in response to Holmes' letter.

Holmes consulted Petitioner about his right to appeal, as well as the opportunity for a Rule 35 motion. Although Holmes does not recall whether he discussed any particular appeal issues, both he and Petitioner testified that they discussed the appeal waiver contained in Petitioner's plea agreement. Holmes stated that based on the appeal waiver and the government's position that it would not file a Rule 35 motion if Petitioner appealed, he recommended that Petitioner not appeal but instead continue his cooperation in hopes of receiving a Rule 35 motion. Counsel's performance in this regard was not unreasonable, and Petitioner has therefore failed to meet his burden of demonstrating that counsel was ineffective in failing to notice a timely appeal.

**III.    Waiver**

The government moves to dismiss Petitioner's claim challenging his classification as a career offender on the ground it is barred by the waiver contained in his plea agreement.[4] A criminal defendant may waive his right to appeal or collaterally attack his conviction and sentence. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Appeal waivers are valid and enforceable where they are knowingly and voluntarily made. *Id.* However, such waivers are not without limits. "For example, a defendant [can] not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). Such errors could not have been reasonably contemplated at

---

[4]Petitioner agreed to waive his rights "to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waiver all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] at the time of [his] guilty plea." (Mem. Plea Agt. [DE #54] ¶ 2(c).)

the time of plea and, therefore, fall outside the scope of a plea waiver. *United States v. Blick*, 408 F.3d 162, 171-72 (4th Cir. 2005).

Petitioner argues his plea agreement is voidable because it is based on the parties' mutual mistake "as to the factual assumptions upon which the advisory Guidelines would be calculated, and this mistake had a material effect that adversely impacted [Petitioner], by subjecting him to substantially greater loss of liberty than contemplated by either party." (Resp. Govt.'s Mot. Dismiss [DE #114] at 6.) Acknowledging that sentencing recommendations are not binding on the court, Petitioner nevertheless asserts that the parties bargained for Petitioner to be sentenced at an advisory Guidelines offense level of 29 and that neither Petitioner nor the Government contemplated that Petitioner would be sentenced as a career offender.

The evidence is this case does not support Petitioner's argument. While it is true that the parties stipulated to a drug weight resulting in a *base* offense level of 34 and further stipulated to the applicability of certain downward adjustments, no evidence has been presented to support a finding that the parties agreed the career offender enhancement was inapplicable to Petitioner. The parties' plea agreement is silent as to the applicability of the career offender guideline and does not make any recommendations concerning the *total* offense level applicable to Petitioner. Moreover, the testimony at the evidentiary hearing of this matter establishes that Petitioner was aware of the possible application of the career offender guideline, that counsel was familiar with the state of the law in the Fourth Circuit and that, in an attempt to preserve the issue, counsel filed a written objection to the presentence report's recommendation concerning application of the career offender guideline. At sentencing, the government agreed with Petitioner that the supervisory role enhancement recommended in the presentence report was not appropriate but did not agree with Petitioner's objection to the career offender enhancement. Assuming the

applicability of the career offender guideline, the prosecutor indicated that the guideline range would be 262 to 327 months (Sent. Tr. [DE #97] at 6) and requested that the court sentence Petitioner in the middle of the guideline range (Sent. Tr. at 10).

The record in this case does not support a claim of mutual mistake. Both parties were aware of the facts, as well as the law, as they existed at the time the plea agreement was entered. *Simmons'* subsequent change in the law regarding the classification of Petitioner's prior state convictions does not constitute a mutual mistake allowing Petitioner to void the plea agreement.

Moreover, claims based on errors in interpreting or applying the sentencing guidelines or due to supervening changes in the law do not fall outside the scope of a plea waiver. *See United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005); *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999) (concluding that alleged error in enhancement for restraint of a victim is "an allegation of an ordinary misapplication of guidelines that does not amount to a miscarriage of justice"). "A plea agreement, like any contract, allocates risk. 'And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea.'" *Johnson*, 410 F.3d at 153 (quoting *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005)) (citation omitted) (alteration in original). Petitioner assumed the risk of a subsequent change in the law in exchange for other benefits provided to him by the plea agreement. "Declining to enforce his [plea] waiver because of a subsequent change in the law would deprive the Government of some of the benefits of its bargain, which might ultimately work to the detriment of defendants who may find the Government less willing to offer a plea agreement." *Id.*

In this case, Petitioner received a sentence of 295 months, well below the statutory maximum of forty years. He does not allege that the sentence imposed was based upon an

13

impermissible factor, such as race, nor has he demonstrated that the sentence imposed was the result of ineffective assistance of counsel. There being no fundamental miscarriage of justice, Petitioner is bound by his plea waiver and is barred from challenging his enhancement as a career offender.

**IV.     Petitioner's Motion for Alternative Relief**

In his supplemental motion, Petitioner alternatively seeks relief from his sentence based on 28 U.S.C. § 2241 and 28 U.S.C. § 1651. "A federal prisoner who seeks to challenge the legality of his conviction or sentence generally must proceed pursuant to § 2255, while § 2241 petitions are reserved for challenges to the execution of the prisoner's sentence." *Farrow v. Revell*, 541 Fed. App'x 327, 328 (4th Cir. Oct. 9, 2013). Nevertheless, a § 2241 petition may be used to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* (quoting *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000)) (quotation marks omitted). In this case, Petitioner challenges his sentence, not his conviction. Accordingly, Petitioner's claim is not cognizable in a § 2241 petition. *See id.* (holding that challenge to armed career criminal status is not cognizable in § 2241 proceeding).

Petitioner's petition for relief pursuant to 28 U.S.C. § 1651 also fails. A writ of audita querela is a common law writ that has been abolished by the Rules of Civil Procedure but has survived as a remedy for defective criminal convictions to "'fill the interstices of the federal postconviction remedial framework.'" *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079

14

(9th Cir. 2000) (quoting *Doe v. INS*, 120 F.3d 200, 203 (9th Cir. 1997)), *cited with approval in In re Watkins*, No. 06-7807, 2007 WL 1041035 (4th Cir. 2007) (unpublished). It is not available to collaterally attack a conviction or sentence where redress is available under 28 U.S.C. § 2255. *United States v. Aguilar*, 164 Fed. App'x 384 (4th Cir. 2006) (unpublished).

The claims raised by petitioner not only can be but, in fact, have been raised by Petitioner in his § 2255 motion. A writ of audita querela is not available or appropriate in this case, and Petitioner's request for relief pursuant to § 1651 should, therefore, be denied.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the government's motion [DE #109] be GRANTED and that Petitioner's motions [DE #105 & 123] be DENIED.

The Clerk shall send a copy of this Memorandum and Recommendation to the parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 53uvday of March 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge